IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA GEISSLER,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY OF ATLANTIC CITY, ATLANTIC CITY POLICE DEPARTMENT, ATLANTIC CITY POLICE OFFICER DARRELL CATANIO, MARINA DISTRICT FINANCE COMPANY, LLC d/b/a BORGATA HOTEL CASINO & SPA<br><br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 16-792 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

Jon R. Skolnick, Esq.
Jenntyng Chern, Esq.
LAW OFFICES OF JON RORY SKOLNICK
100 Morris Avenue, Suite 101
Springfield, NJ 07081
    Attorneys for Plaintiff

Tracy L. Riley, Esq.
LAW OFFICES OF RILEY & RILEY
The Washington House
100 High Street, Suite 302
Mount Holly, NJ 08060
    Attorney for Defendants City of Atlantic City, Atlantic
    City Police Department, and Atlantic City Police Officer
    Darrell Catanio

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

    Plaintiff Lisa Geissler alleges in this action that while

she was a registered guest of the Borgata Hotel and Casino & Spa

in Atlantic City in October of 2014, she was "wrongfully and falsely" accused by Borgata employees of stealing bottles of wine and subsequently "wrongfully and falsely arrested and charged" with defiant trespass by a police officer with the Atlantic City Police Department. Plaintiff directs this suit against the City of Atlantic City, the Atlantic City Police Department ("ACPD"), Atlantic City Police Officer Darrell Catanio ("Officer Catanio") and the Marina District Finance Company, LLC d/b/a Borgata Hotel Casino and Spa ("Borgata"), and alleges constitutional violations under 42 U.S.C. § 1983, the New Jersey State Constitution, and the New Jersey Civil Rights Act, in addition to several state tort claims.

Presently before the Court is a motion to dismiss by the City of Atlantic City, the ACPD and Officer Catanio (collectively, the "City Defendants"), under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant the City Defendants' motion.

## II. BACKGROUND

The Court recites the allegations as they are laid out in Plaintiff's Complaint. [Docket Item 1.][1] For purposes of this motion, the Court must accept Plaintiffs' allegations as true.

---

[1] The facts alleged are drawn from Plaintiff's Complaint and from undisputedly authentic documents upon which Plaintiff explicitly relies in her Complaint. See In re Rockefeller Ctr. Props.,

On October 17, 2014,[2] Plaintiff Lisa Geissler was a registered guest of the Borgata Hotel Casino and Spa. (Compl. ¶ 9.) That evening, Plaintiff was in the Borgata's Lounge when, according to Plaintiff, Borgata employees wrongfully and falsely accused Plaintiff of stealing bottles of wine and demanded that she leave the Borgata's premises. (Id. ¶ 10.)

While forcibly escorting Plaintiff to her room in the Borgata to gather her belongings, Borgata employees reported to Defendant ACPD that Plaintiff was trespassing on the Borgata's premises. (Id. ¶¶ 11-12.) Defendant Officer Darrell Catanio of the ACDP responded to the Borgata employees' report and proceeded to the Borgata. (Id. ¶ 13.) Upon his arrival, Plaintiff alleges that Officer Catanio wrongfully and falsely

_____

Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Because Plaintiff's Complaint explicitly refers to the summons issued by Officer Catanio and she argues that her notice of claim was timely filed, documents related to these matters submitted by Defendants are properly considered in connection with the pending motion to dismiss. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").
[2] According to the Complaint, the incident at issue occurred "on or about October 17, 2015." (Compl. ¶¶ 9-10.) However, the Court will consider October 17, 2014 the proper date of incident, as evidenced by the police report and tort claims notice filed by Plaintiff, which are attached as exhibits to Defendants' Motion to Dismiss. [Docket Item 5.] The Court also refers to the fact that the Complaint states that all charges against Plaintiff were dismissed on April 7, 2015, a date prior to October 17, 2015. (Compl. ¶ 15.)

arrested and charged Plaintiff with defiant trespass under Complaint S 2014 5018. (Id. ¶ 14; Def. Br. Ex. B [Docket Item 5-5].) According to the Complaint, the charge was subsequently dismissed on April 7, 2015 because it "lacked any legal bases." (Id. ¶ 15.) Plaintiff filed a Tort Claims Notice with the City of Atlantic City on June 2, 2015. (Def. Br. Ex. B [Docket Item 5-5].) On February 12, 2016, Plaintiff filed a seven-count Complaint, naming as defendants the City of Atlantic City, the ACPD, and Officer Catanio (together, the "City Defendants"), as well as the Borgata. [Docket Item 1.]

Against the City Defendants only, the Complaint asserts constitutional claims under 42 U.S.C. § 1983 (Count One) and the New Jersey Civil Rights Act (Count Two). (Compl. ¶¶ 16-22.) Against the Borgata, the Complaint asserts a state law claim of defamation (Count Four). The Complaint additionally asserts state law claims against all Defendants for malicious prosecution (Count Three), negligence (Count Five), intentional infliction of emotional distress (Count Six) and negligent infliction of emotional distress (Count Seven). (Id. ¶¶ 23-27, 31-38.)

The City Defendants have now filed a motion under Fed. R. Civ. P. 12(b)(6) seeking to dismiss all claims against them. [Docket Item 5.] They argue that the constitutional claims

4

asserted in Counts One and Two must be dismissed because Plaintiff failed to plead sufficient facts that would give rise to municipal liability. (Def. Br. 4-6.) They also argue that the ACPD is not a proper defendant in a § 1983 action. (Id. at 4.) Finally, the City Defendants contend that the state law claims against them in Counts Three, Five, Six, and Seven should be dismissed because (1) Plaintiff filed an untimely Notice of Tort Claim; and (2) Plaintiff's Complaint lacks sufficient facts to properly state a claim for relief.[3] (Id. at 5-10.)

In her opposition [Docket Item 8], Plaintiff maintains that the City Defendants' motion should be denied because she pled sufficient facts against Officer Catanio to state a claim for relief. (Pl. Br. 2-3.) Additionally, Plaintiff asserts that the Tort Claims Notice she filed was timely and that none of her tort claims should therefore be dismissed. (Id. at 3-4.)

## III. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint and draw all reasonable

---

[3] Because the claim of defamation is asserted only against the Borgata and the Borgata has not moved to dismiss, Count Four is not at issue and will not be discussed in this opinion.

5

inferences in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam).

A motion to dismiss may only be granted if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Although the Court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). A plaintiff should plead sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," Twombly, 550 U.S. at 556, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678.

The Court exercises subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## IV.   DISCUSSION

### A. Plaintiff's Constitutional Claims Against the City of Atlantic City and the Atlantic City Police Department

6

**(Counts One & Two)**

In Counts One and Two, Plaintiff asserts federal and state constitutional claims against the City Defendants under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act. Specifically, Plaintiff argues that the City Defendants, acting under color of state law, violated her Fourth and Fourteenth Amendment rights by "incarcerat[ing]" Plaintiff and causing her to "suffer[] the loss of her freedom." (Compl. ¶ 19.)

Defendants seek to dismiss the claims against the City of Atlantic City and the Atlantic City Police Department, advancing two theories. First, they argue that a municipal police department is not a proper defendant in a case under § 1983. (Def. Br. 4.) Second, they contend that Plaintiff failed to plead sufficient facts required to impose municipal liability under § 1983. (Id. at 4-6.)

The New Jersey Civil Rights Act was modeled after § 1983 and is interpreted analogously therewith in this District. Petit v. New Jersey, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011); see also Catlett v. New Jersey State Police, No. 12-153, 2013 WL 2181273, at *5 (D.N.J. May 20, 2013) (Simandle, J.) (stating that New Jersey courts interpret the New Jersey Civil Rights Act as analogous to § 1983) (citing Ingram v. Twp. of Deptford, No. 11-2710, 2012 WL 5984685, at *8 (D.N.J. Nov. 28,

2012)). Therefore, the Court will address the § 1983 claims contained in Count One of the Complaint concurrently with the claims contained in Count Two.

### 1. The ACPD is Not a Proper Defendant

The Court agrees with Defendants that the ACPD should be dismissed from Counts One and Two because a municipal police department is not a proper defendant in a case under § 1983 and analogous state law. (Def. Br. 4.)

It is well established in this Circuit that courts "treat the municipality and its police department as a single entity for purposes of section 1983 liability." Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997); see also Catlett, 2013 WL 2181273, at *4 (stating that a municipality and a police department are to be treated as a single entity for § 1983 claims). "[P]olice departments cannot be sued alongside municipalities because a police department is merely an administrative arm of the municipality itself." Hernandez v. Borough of Palisades Park Police Dep't, 58 Fed. App'x 909, 912 (3d Cir. 2003). For this reason, when a § 1983 action has been brought against a municipality and a police department, the police department must be dismissed, as "it is to the municipality that any liability must flow." Benjamin v. East Orange Police Dep't, 937 F. Supp. 2d 582, 590 (D.N.J. 2013)

8

(internal quotation marks and citation omitted).

Here, the ACPD is an administrative arm of the City of Atlantic City and is not a proper defendant. The Court will therefore dismiss both Counts against the ACPD.

### 2. Municipal Liability of the City of Atlantic City

The City Defendants argue that Counts One and Two against the City of Atlantic City should be dismissed because Plaintiff's Complaint fails to allege a policy, practice, or custom, which are necessary to sustain a § 1983 action or an analogous state-law action against a municipality. (Def. Br. 4-6.) The Court finds the City Defendants' argument persuasive.

In Monell, the Supreme Court established the rule for imposing liability against a municipality under § 1983. The Court held:

> "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

Monell v. Dep't of Soc. Serv., 436 U.S. 658, 98 (1978).

To prevail on a Monell claim asserting municipal liability, a plaintiff must first establish that the municipality had a policy or custom that contributed to the deprivation of her constitutional rights. See McTernan v. City of York, 564 F.3d

9

636, 657 (3d Cir. 2009) (recognizing that there is a "two-path track to municipal liability under § 1983," either through government policy or custom); Mattern v. City of Sea Isle, 131 F. Supp. 3d 305, 318 (D.N.J. 2015). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F. 2d 1469, 1480 (3d Cir. 1990) (citation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Id. (quoting Monell, 436 U.S. at 698).

Once a policy or custom has been shown to exist, it must be shown that the allegedly unconstitutional conduct causally resulted from that policy or custom. Lapella v. City of Atlantic City, No. 10-2454, 2012 WL 2952411, at *4 (D.N.J. July 18, 2012).

"To satisfy the pleading standard, a [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was" in the complaint. McTernan, 564 F.3d at 658 (upholding district court's dismissal of claims because simply paraphrasing § 1938 was not sufficient to allege Monell claim). Factual allegations must give notice not only "as to the

10

alleged wrongdoing of the individual police officers," but also "as to the alleged policy and custom of the municipality at issue." Lapella, 2012 WL 2952411, at *5 (citing Muller v. Bristol Twp., No. 09-1086, 2009 WL 3028949, at *4 (E.D. Pa. Sept. 17, 2009)); see also Santiago v. Warminster Twp., 629 F.3d 121, 135 (3d Cir. 2010) (affirming dismissal of claims against a municipality because the amended complaint failed to identify what action a municipal official took "that could fairly be said to be policy.").

Here, Plaintiff vaguely asserts "unlawful conduct" on the part of the City of Atlantic City, but does not set forth any particular factual allegations about a specific custom or policy that would support a claim against the City. Nor does she identify how any such policy, practice or custom of Atlantic City caused her injury.[4] Consequently, the Complaint falls far short of alleging the grounds necessary to sustain a municipal liability claim. The Court agrees with Defendants that Monell and its progeny require more. (Def. Br. 6.)

Having failed to identify any municipal policy or custom in her Complaint, Plaintiff fails to state a claim against the City of Atlantic City under § 1983 and the New Jersey Civil Rights

---

[4] Plaintiff's opposition also fails to address Defendants' argument entirely, shedding no light on what Plaintiff may have intended to allege as the unconstitutional municipal policy.

Act. See Ingram v. Twp. of Deptford, No. 11-2710, 2012 WL
5984685, at *8 (D.N.J. Nov. 28, 2012) (stating that New Jersey
courts interpret the New Jersey Civil Rights Act as analogous to
§ 1983 and holding that the New Jersey Constitution does not
permit claims against municipalities on the basis of respondeat
superior). The constitutional claims asserted against the City
of Atlantic City in Counts One and Two will be dismissed.

### B. Plaintiff's Constitutional Claims for False Imprisonment and Malicious Prosecution Against Officer Catanio (Counts One & Two)

Section 1983 of Title 42 provides a civil remedy against
any person who, acting under color of state law, deprives
another of rights protected by the U.S. Constitution. Mattern v.
City of Sea Isle, 131 F. Supp. 3d 305, 313 (D.N.J. 2015). To
establish a claim under § 1983, a plaintiff must demonstrate
that her constitutional rights were violated and that a person
acting under color of state law committed the deprivation. Id.
at 313 (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

"The first step in evaluating a § 1983 claim is to
'identify the exact contours of the underlying right said to
have been violated' and to determine 'whether the plaintiff has
alleged a deprivation of a constitutional right at all.'" Nicini
v. Morra, 212 F. 3d 798, 806 (3d Cir. 2000) (quoting Sacramento
v. Lewis, 523 U.S. 833, 841 n.5 (1998)). The particular

12

constitutional right at issue in Plaintiff's Complaint appears to be her loss of freedom as a "direct and proximate result of the lawful and improper conduct of the City Defendants." (Compl. ¶ 19.) Because Plaintiff locates this right under the Fourth or Fourteenth Amendments, the Court will assume, first, that Plaintiff asserts a claim for false imprisonment.

Under federal and New Jersey law, a plaintiff states a claim for false imprisonment by demonstrating that (1) she was detained and (2) the detention was unlawful. Accordingly, "'where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.'" O'Conner v. City of Philadelphia, 233 Fed. App'x 161, 164 (3d Cir. 2007) (citation omitted); see also Groman v. Twp. of Manalapan, 47 F. 3d 628, 636 (3d Cir. 1995) (where the police officer lacks probable cause to make an arrest, the arrestee has a Fourth Amendment claim for false imprisonment based on a detention pursuant to that arrest); Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988) (a false arrest is an arrest made without probable cause). The existence of probable cause defeats a claim of false imprisonment.

Plaintiff alleges she was "wrongfully and falsely" arrested and charged with defiant trespass by Officer Catanio after being

13

"wrongfully and falsely" accused of trespassing by the Borgata. (Compl. ¶ 14.) Plaintiff fails, however, to allege that she was confined without legal process or other legal authority. Thus, the required elements of false imprisonment are not satisfied.

Nor can the Court conclude from the face of the Complaint that Officer Catanio acted without probable cause under the circumstances. Probable cause exists when, based on the factual circumstances, a prudent person could believe that a particular suspect has committed or is committing an offense. See Sharrar v. Felsing, 128 F. 3d 810, 817–18 (3d Cir. 1997); Islam v. City of Bridgeton, 804 F. Supp. 2d 190, 197 (D.N.J. 2011).

More specifically, probable cause to arrest exists if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Bailey v. Gibbons, No. 09–4119, 2011 WL 4056202, at *7 (D.N.J. Sept. 12, 2011); see also Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) ("Probable cause to arrest exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an

14

offense has been or is being committed by the person to be
arrested.").

While probable cause to arrest requires more than mere
suspicion, the law recognizes that probable cause determinations
have to be made "on the spot" under pressure and do "not require
the fine resolution of conflicting evidence that a reasonable
doubt or even a preponderance standard demands." *Kaltenbach*, 204
F.3d at 436 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 121
(1975)).  A "'common sense' approach [must be taken] to the
issue of probable cause" and a determination as to its existence
must be based on "the totality of the circumstances."
*Kaltenbach*, 204 F.3d at 436 (quoting *Sharrar v. Felsing*, 128
F.3d 810, 818 (3d Cir. 1997)).

Plaintiff contends that because she was a guest of the
Borgata at the time of the incident, Officer Catanio did not
have probable cause to arrest her for defiant trespass. (Pl. Br.
3.) But it is well-settled that "[t]he proper inquiry in a
section 1983 claim based on false arrest . . . is not whether
the person arrested in fact committed the offense but whether
the arresting officers had probable cause to believe the person
arrested had committed the offense." *Dowling v. City of
Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). "In other words,
the constitutional validity of the arrest does not depend on

15

whether the suspect actually committed any crime." <u>Wright v. City of Philadelphia</u>, 409 F.3d 595, 602 (3d Cir. 2005).

The Third Circuit case, <u>Feldman v. Comty. Coll. of Allegheny</u>, 85 Fed. App'x 821 (3d Cir. 2004), is instructive. There, the plaintiff was forcibly removed from a campus computer lab by Pittsburgh police officers and arrested for trespass; he had previously had a dispute with the lab instructor over his contractual right to use the lab. The Third Circuit held in favor of the arresting officers on the plaintiff's false arrest claim. <u>Feldman</u>, 85 Fed. App'x at 825. The Court noted that a college security guard had informed the officers that he had told the plaintiff to leave and the plaintiff refused to comply, and it found that that information was enough to establish probable cause to arrest for defiant trespass. <u>Id.</u>

The allegations in this case are similar. Officer Catanio charged Plaintiff with defiant trespass N.J.S.A. § 2C:18-3(b)(1) (<u>see</u> Ex. B to Def. Br.). N.J.S.A. § 2C:18-3(b)(1) makes it a crime for a person who, "knowing that [she] is not licensed or privileged to do so," "enters or remains in any place as to which notice against trespass is given by . . . [a]ctual communication to the actor." N.J.S.A. 2C:18-3(b)(1); <u>see also</u> <u>Grant v. Caesars Hotel and Casino Atlantic City</u>, No. 10-5653, 2012 WL 3240134, at *4 (D.N.J. Aug. 7, 2012).

16

The Complaint alleges while the Borgata employees were forcibly escorting Plaintiff to her room to gather her belongings, the hotel employees reported to the ACPD that Plaintiff was trespassing on its premises.[5] (Compl. ¶¶ 11-12.) Officer Catanio subsequently responded to the hotel employee's reporting and proceeded to the Borgata. (Compl. ¶ 13.) Upon arrival at the Borgata, Officer Catanio arrested and charged Plaintiff with defiant trespass. (Compl. ¶ 14.) Thus, by the Complaint's own allegations, Officer Catanio arrived on the scene *after* Plaintiff's interaction with Borgata employees, knowing only that hotel employees had reported that Plaintiff was trespassing.

Since Officer Catanio was responding to a report of trespass from the hotel employees, he could have reasonably

---

[5] N.J.S.A. § 5:12-71.1 specifically states:

A casino licensee may exclude or eject from its casino hotel any person who is known to it to have been convicted of a crime, disorderly persons offense, or petty disorderly persons offense committed in or on the premises of any casino hotel. Nothing in this section or in any other law of this State shall limit the right of a casino licensee to exercise its common law right to exclude or eject permanently from its casino hotel any person who disrupts the operations of its premises, threatens the security of its premises or its occupants, or is disorderly or intoxicated.

N.J.S.A. § 5:12-71.1. Officer Catanio could reasonably have believed that the employees of the Borgata were acting within their authority under this statute to eject Plaintiff.

17

believed that he had probable cause to arrest Plaintiff for
violating § 2C:18-3b(1). See Feldman, 85 Fed. App'x at 8251;
Bailey v. Gibbons, No. 09-4119, 2011 WL 4056202, at *9 (D.N.J.
Sept. 12, 2011) (where "[t]he information available to the
officers at the time of arrest – [defendant's] statements, the
deed, and [plaintiff's] failure to demonstrate that she was
allowed on the property – [was] sufficient to establish that
they had reasonable grounds to believe [plaintiff's] entry into
the house was unlicensed and that she knew this to be the case.
Therefore, the officers had probable cause to arrest her.").

Plaintiffs' pleading does not contain "enough factual
matter (taken as true) to suggest" otherwise. Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 556 (2007). She does not allege
that Officer Catanio saw what had really happened, nor does she
allege that Officer Catanio had other information suggesting
that Plaintiff was actually a guest of the hotel. In short,
there are no facts in the Complaint concerning Officer Catanio's
knowledge to infer a basis for Officer Catanio to doubt the
hotel employees' account that she was a trespasser refusing to
leave the hotel upon demand. Plaintiff's constitutional claim
against Officer Catanio for false arrest must be dismissed.

To the extent Plaintiff asserts a constitutional claim for
malicious prosecution, that claim must also be dismissed. To

prove a Fourth Amendment malicious prosecution claim, the plaintiff must show that

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007); see also Jeffreys v. McDonnell, No. 08-4681, 2009 WL 3756681, at *2 (D.N.J. Nov. 6, 2009).

"[I]n an appropriate case, malice may be inferred from a lack of probable cause." LoBiondo v. Schwartz, 970 A.2d 1007, 1025 (N.J. 2009). But conversely, and similar to a claim for false arrest, the existence of probable cause defeats a malicious prosecution claim. Pomykacz v. Borough of West Wildwood, 438 F. Supp. 2d 504, 510 n.8 (D.N.J. 2006) (quoting Wildoner v. Borough of Ramsey, 744 A.2d 1146, 1154 (N.J. 2000)). Simply put, if Officer Catanio had probable cause to believe that Plaintiff committed the offense with which she was charged, then he did not violate Plaintiff's right to be free from malicious prosecution.

As already explained above, even giving Plaintiff the benefit of all favorable inferences, the allegations simply do not make out that Officer Catanio lacked probable cause to

19

arrest Plaintiff for trespassing. Moreover, Plaintiff does not
allege that Catanio acted maliciously, nor are there any facts
in the Complaint to suggest that he did.[6]

As Plaintiff's allegations are insufficient to make out
claims for false arrest and malicious prosecution against
Officer Catanio, Counts One and Two against him must be
dismissed. The Court will, however, dismiss these Counts without
prejudice, as additional facts may come to light to suggest that
Officer Catanio did not have probable cause to believe that
Plaintiff was trespassing. If Plaintiff intends to pursue claims
for false arrest or malicious prosecution, she must file a
proposed amended complaint containing more factual allegations
supportive of such a theory, curing the deficiencies noted
above.

### C. Plaintiff's State Tort Claims Against the City Defendants Will be Dismissed (Counts Three, Five, Six & Seven)

In addition to the constitutional claims, which the Court
dismissed above, Plaintiff asserts state law claims against the
City Defendants for malicious prosecution (Count Three);
negligence (Count Five); intentional infliction of emotional

---

[6] Nor is the fact that Plaintiff's charge was ultimately
dismissed sufficient to show malice. See LoBiondo v. Schwartz,
970 A.2d 1007, 1025 (N.J. 2009) ("[I]f the only evidence of a
lack of probable cause was the inference derived from favorable
termination of prior suit, some extrinsic evidence of malice
will be required.").

distress (Count Six); negligent infliction of emotional distress
(Count Seven). The City Defendants seek to dismiss all counts,
arguing that Plaintiff failed to plead sufficient facts to
properly state a claim for relief, and that Plaintiff filed an
out-of-time Notice of Tort claim.

For the reasons explained below, the Court finds that with
exception to Plaintiff's malicious prosecution claim,
Plaintiff's state tort claims are indeed time-barred. Although
the malicious prosecution claim is timely, the Court cannot
allow it to go forward because Plaintiff has failed to plead
sufficient facts to state a claim for relief. The Court will
address each argument in turn.

### 1. Plaintiff's Claims for Negligence and Emotional Distress (Counts Five, Six, & Seven) are Time-Barred, but Her Claim for Malicious Prosecution (Count Three) is Not

The New Jersey Tort Claims Act ("NJTCA") sets forth a
procedural framework for making claims against public entities
and public employees. See N.J.S.A. § 59:8-3. The Act requires
notice of a claim of injury against a public entity to be
presented within ninety days of the accrual of the cause of
action. Failure to provide notice within the statutory ninety-
day window is a ground for dismissal with prejudice. See
N.J.S.A. § 59:8-8 (A claimant shall be "forever barred from
recovering against a public entity or public employee" if the

21

claimant fails to file the claim with the public entity "within 90 days of accrual of the claim."); see also Evans v. Gloucester Twp., 124 F. Supp. 3d 340, 353-54 (D.N.J. 2015); Lassoff v. New Jersey, 414 F. Supp. 2d 483, 489-90 (D.N.J. 2006) ("A suit will be dismissed if the claimant did not provide a notice of claim to the entity within ninety days of the 'accrual of a cause of action.'" (citation omitted)); Sinclair v. Dunagan, 905 F. Supp. 208, 211 (D.N.J. 1995) ("The filing of the notice is a statutory procedural prerequisite to filing suit.").

The City Defendants argue that all four state tort claims against them must be dismissed because Plaintiff failed to satisfy the notice requirements under the NJTCA. Specifically, they contend that Plaintiff's tort claims are time-barred since Plaintiff filed her Notice of Claim on June 8, 2015, nearly eight months after her October 17, 2014 arrest by Officer Catanio. (Def. Br. 8-10 & Ex. B.)

Citing Muller Fuel Oil Co. v. Ins. Co. of N. Am., 232 A.2d 168, 174 (N.J. Super. Ct. App. Div. 1967), Plaintiff argues that a malicious prosecution claim does not accrue until the criminal proceeding has terminated in a plaintiff's favor, and her claim could not have accrued until after her charge for defiant trespass was dismissed on April 7, 2015, making her June 8, 2015 filing of the Notice timely. (Pl. Br. 3-4.) Plaintiff also

22

argues that her claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress are subject to New Jersey's "discovery rule," and similarly did not accrue until after the defiant trespass charge was dismissed on April 7, 2015. (Pl. Br. 4.)

While the Court agrees with Plaintiff that the Notice of Claim was timely with respect to the malicious prosecution claim, the Court finds that the remaining claims are time-barred because the discovery rule is inapplicable to this case.

For purposes of the NJTCA, the accrual date of a claim is the date on which the alleged tort is committed or the negligent action or omission occurred. Beauchamp v. Amedio, 751 A.2d 1047, 1050 (N.J. 2000). The New Jersey "discovery rule," however, provides that "in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." Lopez v. Swyer, 62 N.J. 267, 272 (1973)).

The New Jersey Supreme Court has held that "the discovery rule applies to claims brought pursuant to the [Tort Claims] Act," and applies (1) where a "victim either is unaware that he has been injured" or (2) "although aware of an injury, does not know that a third party is responsible." Maher v. County of

23

*Mercer*, 894 A.2d 100, 103 (N.J. Super. Ct. App. Div. 2006); see also Cliett v. City of Ocean City, No. 06-4368, 2007 WL 2459446, at *4 (D.N.J. Aug. 24, 2007). In these instances, a claim accrues either on the date the plaintiff learns of the cause of the injury or the date the plaintiff learns that a third party other than the named defendant is responsible for the injury. Cliett, 2007 WL 2459446, at *4 (citing Beauchamp, 751 A.2d at 1050); see also Servis v. State, 511 A.2d 1299, 1301 (N.J. Super. Ct. App. Div. 1986) (New Jersey's discovery rule is applicable to the filing of late Notice of Claim where "[t]he cause of the injuries . . . were unknown and unascertainable until the medical reports were made available.").

The facts of this case do not fit either exception to the rule. Plaintiff claims that she was "wrongfully and falsely arrested and charged" with defiant trespass on October 17, 2014, and that "[a]s a direct and proximate result of the unlawful acts of the City Defendants," she suffered mental anguish, humiliation, and embarrassment." (Compl. ¶¶ 14, 18.) Specifically she alleges that she suffered intentional and negligent emotional distress from the "intentional," "careless, "negligent and/or reckless acts" of the Defendants stemming from the incident at the Borgata. (Id. ¶¶ 34, 37.) The date of the incident that gave rise to her claims was known to Plaintiff,

24

and she does not, and cannot, argue that she was unaware of her emotional distress and of Defendants' negligence until after her defiant trespass charge was dropped. (Pl. Br. 4.)

Nor can Plaintiff argue that some third party previously unbeknownst to her was responsible for her injury. Plaintiff knew the identity of Officer Catanio as soon as she was served with a "Complaint Summons" signed by Officer Catanio in October of 2014. (See Def. Br. Ex. B.) Thus, Plaintiff cannot reasonably assert that she did not learn that Officer Catanio was the proper defendant until after April 7, 2015.[7]

---

[7] "At the heart of the discovery rule is the fundamental unfairness of barring claims of which a party is unaware." Roa v. Roa, 985 A.2d 1225, 1234 (N.J. 2010) (citing Mancuso v. Neckles, 747 A.2d 255, 256 (N.J. 2000)). Thus, the discovery rule typically applies to medical malpractice, product liability or other fraud-type tort claims involving intentional concealment. See, e.g., Lapka v. Porter Hayden Co., 745 A.2d 525 (N.J. 2000) (applying "discovery rule" to occupational asbestos exposure claim); Vispisiano v. Ashland Chem. Co., 527 A.2d 66 (N.J. 1987) (toxic tort claim); Diamond v. N.J. Bell Tel. Co., 242 A.2d 622 (N.J. 1968) (negligent installation of underground conduit); New Mkt. Poultry Farms, Inc. v. Fellows, 241 A.2d 633 (1968) (professional error of land surveyor). For example, in Fernandi v. Strully, 173 A.2d 277 (N.J. 1961), the plaintiff had a hysterectomy performed and subsequently suffered back pain. After X-rays revealed that a foreign object was lodged in her abdomen, the doctor who performed her hysterectomy confirmed that a wing nut had gone missing during her operation. Id. at 278. Although the plaintiff filed her lawsuit outside the two-year limitations period for medical malpractice actions, the New Jersey Supreme Court held that her complaint was not time-barred, because the circumstances "establish[ed] that the cause of action was unknown and unknowable to [the plaintiff] until shortly before she instituted suit." Id. at 286.

Because the discovery rule does not apply in this case, the Court deems Plaintiff's claims for negligence and emotional distress to have accrued on the date of her arrest on October 17, 2014, when the alleged torts were committed. Consequently, the 90-day period within which Plaintiff had to file her Notice of Claim began to run on October 17, 2014, and expired on January 15, 2015. Because Plaintiff failed to file her administrative Notice of Claim by this date, the City Defendants are correct that these claims are time-barred. Accordingly, Counts Five, Six and Seven against the City Defendants will be dismissed with prejudice as untimely.

With respect to the malicious prosecution claim, however, the Court agrees with Plaintiff that her Notice of Claim was timely filed. It is well-settled that a malicious prosecution claim does not accrue until the criminal proceeding has terminated in a plaintiff's favor. (Pl. Br. 3-4.) See, e.g., Torres v. McLaughlin, 163 F.3d 169, 176 (3d Cir. 1998) ("[F]or statute of limitations purposes, a § 1983 claim for false arrest accrues on the date of the plaintiff's arrest, while a malicious prosecution claim does not accrue until a favorable termination is obtained."); Evans v. Gloucester Twp., 124 F. Supp. 3d 340,

---

These cases are wholly dissimilar to the instant case, where Plaintiff knew of her injury and of the responsible party at the time of her arrest.

352 (D.N.J. 2015) ("[M]alicious prosecution claims do not accrue until charges are dismissed."); <u>Muller Fuel Oil Co. v. Ins. Co. of N. Am.</u>, 232 A.2d 168, 174 (N.J. Super. Ct. App. Div. 1967) ("Since a suit for malicious prosecution must await a favorable termination of the criminal proceeding, the statute of limitations does not begin until such termination.").

Plaintiff's malicious prosecution claim did not accrue until April 7, 2015, when the defiant trespass charge against Plaintiff was dismissed. Thus, Plaintiff's Notice of Claim, which was filed 62 days later, fell within the 90-day notice requirement of N.J.S.A. 59:8-8, and her malicious prosecution claim asserted in Count Three arising under state law is not time-barred.

### 2. Plaintiff Has Failed to State a Claim for Relief for the Tort of Malicious Prosecution (Count Three)

The City Defendants also argue that Counts Three, Five, Six and Seven fail to state a claim upon which relief may be granted. (Def. Br. 6-7.) Because Counts Five, Six and Seven have already been dismissed with prejudice, the Court will only address Plaintiff's malicious prosecution claim asserted in Count Three.[8]

---

[8] The Court notes that the remaining Borgata is also named in Count Three for malicious prosecution. No determination is made or implied as to Borgata's separate liability thereon, since it

27

Plaintiff alleges that the Borgata and the City Defendants "wrongfully and falsely charged Plaintiff and/or cause[d] Plaintiff to be charged with alleged violations of statutes relating to defiant trespassing," that "on April 7, 2015 all charges were dismissed against Plaintiff," and that "the actions of the Borgata and the City Defendants constituted malicious prosecution." (Compl. ¶¶ 24-27.)

The tort of malicious prosecution is similar to the constitutional claim, and requires a plaintiff to show: "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Helmy v. City of Jersey City, 836 A.2d 802, 806 (N.J. 2003). In essence, the proceeding must have been instituted "without reasonable or probable cause." Shoemaker v. Shoemaker, 78 A.2d 605, 607 (N.J. Super. Ct. App. Div. 1951). The plaintiff must establish each of these elements for the cause of action to survive. Brunson v. Affinity Fed. Credit Union, 972 A.2d 1112, 1119 (N.J. 2009).

---

is not a movant and its participation in, and knowledge of, the underlying events may be different from that of the City Defendants. See, e.g., Voytko v. Ramada Inn of Atlantic City, 445 F. Supp. 315, 321 (D.N.J. 1978) (circumstances under which a hotel may be liable for malicious prosecution of patron).

As already explained above, Plaintiff has not pleaded any facts to support a reasonable inference that her arrest for defiant trespass occurred without probable cause of Officer Catanio, based upon what he knew at the time of arrest. She similarly fails to demonstrate that her arrest was motivated by malice. Nowhere in the Complaint does Plaintiff even assert that Officer Catanio acted with malice, and there are no facts that would support such an allegation.

Because the facts as alleged are insufficient to satisfy two of the required elements of the tort of malicious prosecution, Count Three against the City Defendants must be dismissed. The Court will dismiss Plaintiff's malicious prosecution tort claim against the City Defendants without prejudice, thereby permitting Plaintiff to file a motion to amend her complaint to include additional factual allegations suggestive of malice and a lack of probable cause if those facts exist.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant the City Defendants' motion to dismiss Counts One, Two, Three, Five, Six and Seven against the City Defendants. Because the ACPD is not a proper party to the action, claims against the ACPD will be dismissed with prejudice. Because the state law claims for

negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress are time-barred under N.J.S.A. § 59:8-8, Counts Five, Six, and Seven will also be dismissed with prejudice as to the City Defendants. The accompanying Order will be entered.


**July 28, 2016**                    **s/ Jerome B. Simandle**
Date                              JEROME B. SIMANDLE
                                  Chief U.S. District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA GEISSLER,<br><br>           Plaintiff,<br><br>   v.<br><br>CITY OF ATLANTIC CITY, ATLANTIC CITY POLICE DEPARTMENT, ATLANTIC CITY POLICE OFFICER DARRELL CATANIO, MARINA DISTRICT FINANCE COMPANY, LLC d/b/a BORGATA HOTEL CASINO & SPA<br><br>           Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 16-792 (JBS/AMD)<br><br>**ORDER** |

This matter having come before the Court on a motion by Defendants City of Atlantic City, Atlantic City Police Department, and Atlantic City Police Officer Darrell Catanio to dismiss all claims against them [Docket Item 5]; the Court having considered the submissions of the parties in support thereof and opposition thereto; for the reasons stated in the Opinion of today's date; and for good cause shown;

IT IS this __28th__ day of __July__, 2016 hereby

ORDERED that Defendants' Motion to Dismiss be and hereby is **GRANTED**, and Defendants City of Atlantic City, Atlantic City Police Department, and Darrell Catanio shall be DISMISSED from the action. Because the ACPD is not a proper party to the action, claims against the ACPD will be dismissed with

prejudice. Counts Five, Six, and Seven will also be dismissed

with prejudice. Plaintiff may file a motion for leave to file an

Amended Complaint, accompanied by a proposed Amended Complaint

that cures the deficiencies noted in the Opinion, within thirty

(30) days of the entry of this Order.

 **s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge